Filed 8/10/16  Marriage of Terrell CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of LILA TERRELL and FRED TERRELL. | |
| LILA TERRELL,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>FRED TERRELL,<br><br>        Defendant and Appellant. | A143954<br><br>(Sonoma County<br>Super. Ct. No. SFL-61700) |

        This case arises out of the default judgment of marital dissolution taken by plaintiff Lila Terrell against Fred Terrell.[1]  After Lila gave Fred notice of entry of taking his default, Fred unsuccessfully moved to set the default aside.  We affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

        Following a long-term marriage, Lila filed a petition for dissolution on January 10, 2013.

        On January 14, 2013, Lila caused Fred to be served with a summons and the petition.

        In August 2013, Fred contacted attorney Gregory B. Orton, who had represented both him and Lila in an earlier legal matter.  Orton contacted Lila's attorney, asking her

_____

        [1] For the sake of clarity, we refer to the parties by their given names.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 280, fn. 1.)

client to waive any potential conflict of interest should he undertake to represent Fred in the divorce proceedings.  Lila declined to waive any conflict.

The parties attempted mediation, attending sessions in November 2013 and January 2014.  However, Fred failed to provide certain required financial documents, and no further sessions were ever scheduled.

On July 14, 2014, Lila filed a request for default.  That same day, the trial court filed and served a default against Fred.

On July 25, 2014, the trial court filed and served an amended default against Fred.

On August 22, 2014, Fred, through Orton, submitted a request to set aside the default under Code of Civil Procedure section 473, subdivision (b),[2] based on his inadvertence, surprise, and excusable neglect.

On September 5, 2014, the trial court entered the default judgment.[3]

On September 8, 2014, Fred served Lila with his motion to set aside. The pleadings include a declaration by Fred, acknowledging that he knew Lila had filed a petition for dissolution in January 2013.  He stated that the parties had attempted to mediate the terms of a divorce while continuing living together with their two minor children until July 10, 2014, when he moved out of the family home.  Even after he moved out, he "believed that [they] were still committed to mediation, if [they] were going to go forward at all."  However, four days after he moved out, he unexpectedly received a copy of Lila's request to enter default.  He alleged she "agreed to have my default taken, on advice of counsel, to obtain an advantage in subsequent negotiations."

In response, Lila disputed both the necessity of a warning prior to filing a request for default and the existence of any agreement to forgo court proceedings, declaring: "Fred did not request, nor did I agree, to refrain from filing anything with the court without discussing it with him first.  In fact, I informed Fred that if he refused to engage with me, my only option would be seeking orders from the court."

---

[2] All further statutory references are to the Code of Civil Procedure.

[3] Fred has not appealed this final judgment or claimed errors as to it.  Accordingly, we need not detail the terms of the judgment.

After a hearing on November 7, 2014, the trial court denied Fred's request to set aside the default judgment, concluding he failed to meet his burden to justify relief pursuant to section 473. This appeal followed.

## DISCUSSION

### I. *Procedural Defects On Appeal*

Lila correctly notes that Fred's appeal is procedurally defective in that his appellant's appendix is not consecutively numbered, is incorrectly indexed, and omits some necessary documents. (See Cal. Rules of Court, rule 8.144.) Lila has submitted her own appendix and asks that we impose sanctions against Fred. Given that the record in this case is relatively small, and that between the two appendices we do have a complete appellate record, we decline to impose any sanctions against Fred or his counsel.

### II. *The Denial of Fred's Request for Relief from Default Was Not an Abuse of Discretion*

Section 473 provides in pertinent part that "[t]he court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . ." (§ 473, subd. (b).) Such a motion for relief from default is addressed to the trial court's sound discretion; an appellate court will not interfere without a clear showing of abuse of that discretion. (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1266.)

Fred contends in his opening brief that an abuse of discretion is shown by the absence of evidence that Lila would be prejudiced if the default were to be set aside. His point is not well taken. It is true that a court's discretion to grant relief on one of the statutory grounds—mistake, inadvertence, surprise, or excusable neglect—is broad in the absence of prejudice to the opposing party. (*Russell v. Trans Pacific Group* (1993) 19 Cal.App.4th 1717, 1729–1730.) But that is the converse of the proposition urged, that the absence of prejudice alone requires relief. The absence of prejudice to the opposing party is not among the grounds required by section 473, subdivision (b), and it is not alone sufficient to entitle a party to relief from default (much less to require that result).

3

Fred next argues that Lila's attorney had an ethical obligation to warn him before taking his default. In part, he relies on section 15 of the California Attorney Guidelines of Civility and Professionalism (Guidelines), adopted by the California State Bar in 2007. That section provides: "An attorney should not take the default of an opposing party known to be represented by counsel without giving the party advance warning." We first observe the Guidelines are considered "best practices" only, and are not mandatory: "The Guidelines are not intended to supplant [the Rules of Professional Conduct] or any other rules or laws that govern attorney conduct. Since the Guidelines are not mandatory rules of professional conduct, nor rules of practice, nor standards of care, they are not to be used as an independent basis for disciplinary charges by the State Bar or claims of professional negligence." (Guidelines, Introduction, p. 3.)

We also note that Lila has never waived the conflict of interest arising from Orton's prior representation. The record thus supports the inference that Lila's attorney did not understand Fred to be represented by Orton, given that her client never waived the conflict of interest and that there were no further communications from Orton after his initial August 2013 contact. Additionally, it appears Fred was warned in the very first written communication made to him by Lila's attorney that his default could be taken if he failed to respond. He was also given notice from the summons accompanying the petition for dissolution. We conclude the trial court did not abuse its discretion in failing to relieve him from the judgment based on Lila's counsel's conduct.

Next, Fred argues that the trial court should have set aside the default based on his excusable inadvertence. But it is not clear that he acted inadvertently. The fact that he sought to retain Orton early in the dissolution process strongly suggests that he was aware of the need to protect himself from an adverse result.

Even assuming his default was caused by inadvertence, Fred does not persuade us that the inadvertence is excusable. He relies on *Pearson v. Continental Airlines* (1970) 11 Cal.App.3d 613 (*Pearson*), for the proposition that "[w]here the inadvertence of the defaulting party rests not on simple forgetfulness, but on a misunderstanding he or she shares with another person, whether a party to the action, and the failure to file a timely

response is a mistake which might easily be made without any culpable carelessness on behalf of the defaulting party the inadvertence is excusable." Along these lines, he asserts he and Lila "had an agreement to mediate their divorce rather than proceed with taking his default and seeking other court orders," and claims he believed she would notify him before having his default taken. However, Lila's declaration reports that Fred refused to discuss their divorce and failed to cooperate with moving it forward, either formally or informally. As noted above, the parties' mediation efforts stalled in January 2014 due to his failure to fully participate, and no further mediation sessions were ever scheduled. She also indicates she informed him that she would seek orders from the court if he continued to refuse to engage with her in the divorce process. Thus, there is substantial evidence in the record to support the view that Fred's belief that the parties would not engage in court proceedings was entirely subjective, and was not based on an actual mutual understanding.

Fred also cites to *Pearson,* again for the proposition that courts must consider whether a plaintiff will suffer prejudice as a result of setting aside the other party's default. However, the posture of *Pearson* is different in that in *Pearson* the trial court had *granted* the defendant's motion to vacate, whereas in the instant case the motion was denied. (*Pearson, supra,* 11 Cal.App.3d at p. 615.) Additionally, the plaintiff in that case had waited until seven months after his automobile accident to commence the action giving rise to the lawsuit, a factor that the appellate court found significant. (*Id.* at p. 619.) Here, there is no suggestion that Lila engaged in any kind of sharp practice or gamesmanship when she filed her petition for dissolution.

Fred also asserts the default judgment should have been set aside on the grounds of surprise and/or excusable neglect. In this context, "surprise" is some condition or situation in which a party " 'is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against.' " (*Baratti v. Baratti* (1952) 109 Cal.App.2d 917, 921.) "Excusable neglect" is "that neglect which might have been the act of a reasonably prudent person under the same circumstances." (*Ibid*.) We find the authorities Fred relies on to be inapposite.

5

*Credit Managers Assn. v. National Independent Business Alliance* (1984) 162 Cal.App.3d 1166 (*Credit Managers*) involved a default taken against an assignor without notice to the assignee. Since the assignee was the legal representative of the assignor, holding property in trust for the benefit of all creditors, it had a duty to defend the property, and was taken by surprise by the default. (*Id.* at pp. 1172–1173.) The facts in *Credit Managers* are not analogous to the instant case, which only involves the present parties.

In *Fennell v. Fennell* (1962) 199 Cal.App.2d 267, 270 (*Fennell*), the appellate court found no abuse of discretion in the decision to grant a motion to set aside a default after the lower court concluded an understanding existed between the parties that the defendant would have a further opportunity to be heard. (*Id.* at pp. 268, 270.) The case does not assist Fred, since here he is asking for an abuse of discretion to be found. Further, there is substantial evidence in the record that the parties were not engaged in ongoing settlement negotiations and did not have a mutual agreement that Fred's default would not be taken without additional notice. Instead, the evidence supports the conclusion that the parties had abandoned any effort at resolving their issues through mediation, leaving court intervention as the only option to move the process forward.[4]

In sum, the record fully supports the trial court's determination that Fred's failure to respond to the dissolution action did not result from inadvertence, surprise, or excusable neglect, and that he failed to carry his burden of justifying relief from default. He has shown no abuse of discretion in the court's refusal to grant him that relief.[5]

_____

[4] Fred also cites to *Dahlin v. Moon* (1956) 141 Cal.App.2d 1 (*Dahlin*), a case very similar to *Fennell, supra,* 199 Cal.App.2d 267, in that the appellate court found no abuse of discretion in the lower court granting a motion to set aside a default where the plaintiff's attorney did not notify the defendant's attorney that he intended to take a default while the parties were engaged in settlement negotiations. (*Dahlin*, at p. 5.)

[5] It appears Fred failed to take all the necessary steps to cure his own failure to file responsive pleadings. Section 473 is unequivocal that application to be relieved from a default judgment must be accompanied "by a copy of the answer or other pleading proposed to be filed therein, otherwise the application *shall not be granted*." (§ 473, subd. (b), italics added.) At the hearing on the motion to set aside the default, the trial

6

**DISPOSITION**

The order denying Fred's request for relief from the default judgment is affirmed.

---

court noted Fred had not filed responsive pleadings and apparently had not included any with the motion to set aside his default.  However, Lila elected to waive this point below.

_____
DONDERO, J.

We concur:

_____
HUMES, P. J.

_____
BANKE, J.

A143954